Please be seated. Good morning. We have five cases for oral argument this morning. We'll probably take a break after the third one, see how our time management goes. With me today is Judge McHugh from Utah and Judge Rossman from upstairs. All right, let's start with 23-9570 Fabrizius v. U.S. Department of Agriculture. Mr. Grant, you may proceed. Yes, sir. Thank you. Good morning. May it please the Court, my name is Tom Grant and I am here today on behalf of Fabrizius Livestock. The Court has read the brief, so I don't want to spend a lot of time going back and reading large portions of what you've already read, but I do want to get to the central issue that we're here for today, and that's does 9 CFR 86.5 put a reasonable person on notice of who's required to act under the regulation? So 9 CFR 86.5, the pertinent part of that that I would like to focus on and that I think merits underscoring is that a person reasonable, the person responsible for animals leaving the premises for interstate movement must ensure the animals are accompanied by an interstate certificate of veterinary inspection. And if it's okay with the Court, I probably will just refer to that as ICVI throughout, but the regulation right before that, 9 CFR 86.1, gives definitions of all sorts of things. In fact, I think there are 25 or 30 terms that are defined, but there is no definition, there's a failure here, no definition of person responsible for animals leaving the premises for interstate movement. It's persons, isn't it? It is persons. And there's a definition of person, right? There is. There is a definition of persons. And in fact, I think in looking at the legislative history, originally it was person, and they changed it to persons in an effort, I think, to make it more understandable. But in my opinion, they broadened it so that it could be more than just one individual and also so it could be a seller, a buyer, a transporter. But in my opinion, when they broadened that, they muddied the waters further, and it makes it more difficult to understand who is responsible. So I just, I'm not sure I'm following an answer to my question. So do we take the definition from 86.1 of person when we're thinking about 86.5? The definition of person, I think you can still apply it to 86.5. So really, so your argument focuses on responsible. Right. And who's responsible? And really, the entire argument gets down to how do you, why do you write something that talks about when people are going to leave the premises? And instead, the real focus of this should be on when do you cross the state line? And so my argument is that if you are wanting to make this clear so that somebody understands, a reasonable person would understand and have knowledge that they're being charged with a duty, that they have this duty to provide this ICVI. If you want them to know that, it would be very easy to clarify this by saying the person who crosses the state line, at the time that those wheels go over the state line, whoever is behind the wheel of that vehicle is the person who should be charged with a crime if they don't have the proper paperwork. So that would make it so that sometimes that could be the buyer. If the buyer were going to deliver horses to another state, I mean, it could be the seller. If the seller is going to deliver them to another state, it could be the buyer who bought them and is going to transport them back to their ranch in Utah. Or it could be the transporter. It seems to me it would be a standard practice to just, when you sell your horses to somebody, to make it a part of the contract that the buyer is going to obtain the certificate. Right. Isn't there a standard? I mean, you've been selling horses for years, right? Right. Never provided certificates sometimes? Yeah, and I think that, again, that that's where the confusion comes in about who is responsible, is that if you talk to people in the horse community, in Western United States even, nobody thinks that the buyer needs to go get a certificate. And, again, this is a common sense argument, but it's about the whole idea that the nature of a transaction, of a sale, is that once I sell the horse to somebody else and receive the money and give them a bill of sale, they now own and have dominion and control over the animal. So it seems not logical. So you're saying then the buyer, I thought you said the buyer, nobody thinks the buyer should get the certificate. Oh, I'm sorry. I did say that, Your Honor. The buyer always. Well, the buyer always, it's the seller, and I'm sorry, that probably made no sense. What I'm saying is when you sell an item to somebody else and you accept their money and you give them a bill of sale, they now own it. So the idea that the seller of a horse is supposed to be the one to provide these certificates of veterinary inspection doesn't fly, it just doesn't make common sense. The way this works at either an individual sale or at a horse barn is that the sale takes place and the person who now owns the horse is responsible for deciding what to do with it. And if they're going to take it across state lines, it's their responsibility to have a certificate, an ICVI. But they could have done that, and then it would say the buyer instead of persons. It would say the buyer is responsible, but that's not what it says. It says the person's responsible, so the buyer and the seller are both responsible when a horse is sold with the knowledge that it's being bought by a buyer who's out of state. Right, and I agree that they broadened it so that it could include the seller. And I even think, and that's what I was trying to explain earlier, that it could make sense that it's the seller if in fact the seller was selling to somebody in another state and then knew that they were going to be the person who, I'm going to load up my horses and I'm going to drive them over to Wyoming or to Utah, then I know that I need to have an ICVI. But if I sell my horses on my property, this seems to focus on when the horse is leaving the premises. And so this could make a ranch hand could be responsible for this. I mean, anybody who's actually physically loading a horse onto a trailer is responsible. If it's not vague as to you as the seller, you don't get to argue about a ranch hand or, you know, a mechanic or, you know, the person who harvests the hay. So you've got to focus on that it's unconstitutionally vague as to the seller. Right, and as to the seller as a seller. And again, my client is a cowboy, a rancher, and he's very smart about what he knows and about how you buy and sell horses. But he's not a legal scholar. And even lawyers looking at this. I mean, we had three lawyers read this in our office and we're all looking at each other going, I have no idea who they mean by a person responsible. So to me, even if you read the person responsible, you'd have a different issue. But you keep doing that. And I think the person's responsible that it's plural. Sure. Words matter. And apologize. Person's responsible. But it still doesn't make clear. Does that mean that all three people have to go out and get this? Do they have to communicate? Shouldn't there be some sort of educational program? Something that lets people know. But isn't the removal of the word directly the change? Doesn't that hurt your argument? Or maybe you can help me understand how to reconcile the removal of the word directly now that it's broadened. How does that, how does your argument survive that? The directly. But it used to be person directly responsible. Okay. And now it says person's responsible instead. So they took out directly and they added the S and made it plural so that it could be more than one person. And I think, again, that made it more confusing, not less confusing. To take out the word directly means that now person's responsible. How do you define who are the persons responsible for this? And would it change from transaction to transaction? And how would you delineate that? Where I was starting to go a moment ago with this is to say to me it would make sense in this regulatory scheme. If they want this to always be clear, you could say that the seller has the responsibility to ask people. And there could be a federal form that needs to be filled out and signed. Where is this horse going to be? Where are you taking him? Because I think it's a big assumption to say that if somebody from Utah contacts my client in Colorado and says I'd like to buy five horses, that he automatically assumes they're going back to Utah. That person might own property here in Colorado. They might be taking the horses to a different place in Colorado. Was your client even aware of the existence of this regulation? You know, I've never asked him if he read the regulation. If I'm honest, I would think that he probably hadn't actually read it. But I think in the broader context, what we're trying to say is for even somebody who is seeking that kind of advice, say he came to his lawyer and said, hey, there's this code, this 8065. I want to know am I supposed to have these veterinary inspection certificates and am I required to get them? I don't think a lawyer can answer that question very easily reading this. I couldn't. In addition to person being defined, the term move is also defined in the regulation, and it refers to those responsible for an animal, quote, departing a premises, movement across state lines. Right. Isn't that a stronger clue as to what persons responsible might mean? I think it could shed some light, but I think that, again, departing the premises, I don't know why that is even part of the regulation or the scheme, because horses can depart the premises and probably 90 percent of the sales that take place at Fabritius are to other people who live in Colorado and are taking the horses to Colorado. And so the act of leaving the premises isn't the... Right. None of these were intrastate transactions where your client was surprised at the ultimate destination. Well, I don't know whether he was surprised or not about the ultimate destination, but he did know that these people lived in other states when he made those commitments to sell the horses. Does that matter to your Begna's argument? I don't think that it does, because, again, what I'm arguing is there should be clarity to put somebody on notice of what it is that they're required to do. And if I'm supposed to get this certificate of veterinary inspection, I should be able to read this as a common, ordinary person and understand what it means. And at least if I went to my lawyer and asked for advice, it should be clear enough to somebody who has legal training, if they read it, to be able to say it's very clear to me that you're, as a seller, you need to have this. So I feel that this is vague. I think right above you it says the reason is the soul of all law. It should be reasonable and fair so that a person is put on notice that they owe a fine. Let me interrupt you. With respect for at least one of the horses, apparently he knew enough to order an interstate certificate of veterinary inspection but didn't wait for the results before letting the horse leave the premises and leave the state. Correct. So that was the one horse that went to Wyoming. Yeah, and it caused big problems because, indeed, it was infected. And it's hard to say he didn't understand. He had some obligation when he was in the middle of performing that obligation when he let it ship. Right, and in that case, I believe he took that horse to Wyoming. So that's why he got the certificate. And, yes, he should have waited the four days. But to his credit, my client or his company, as soon as they were aware that the test came back negative, they sounded the alarm and let people know. So he takes responsibility for that. There was also a part where he was charged with 14 horses that he purchased in Wyoming and brought back to Colorado. And, again, from the very initial pleading, we indicated that he was responsible for that. So my clients are responsible rancher, cowboy, business owner, and does take responsibility. He basically fought this and wanted to have a hearing in front of the ALJ because he really believed that buyers aren't, in his world, the sellers, excuse me, that the sellers aren't responsible for this. Counsel, can I ask you what I hope is just a housekeeping question?  The entity find is Fabricius Livestock with no LLC. And the petitioners to this quarter, Jason Fabricius, your client, and then Fabricius Livestock LLC. Fabricius and the LLC, it's the same entity, right? It is. There's no distinction. Thank you, Counsel. Thank you. Let's hear from the government. Mr. Kennedy. Thank you, Your Honor. Kevin Kennedy for the government. This court should deny the petition for review. First, Fabricius Livestock was among the persons responsible for the animals it sold, leaving its premises for interstate movement. That is evident, whereas here it is undisputed that Fabricius Livestock conducted the sales from its own premises. It sold them to out-of-state buyers. It helped load those horses for interstate movement, and those horses were transported directly across state lines. Second, that regulation is not unconstitutionally vague. It sets forth a documentary obligation where parties meet a familiar qualitative standard, responsibility for a particular event. Those sorts of judgment calls are everywhere in the law. And Fabricius Livestock, for its part, is not close to the line. What's the mens rea requirement? Does the seller have to know the horse is going to be moved out-of-state? There's no santa requirement for the imposition of civil penalties under the statute. If you look, there is a knowledge requirement for the imposition of criminal penalties, but for the imposition of a civil penalty like this one, there's no knowledge requirement. So for the seller to comply, they need to get the certificate for every horse, whether they think it's staying in Colorado or not. So I think for the seller to comply, you know, the seller could indeed obtain the certificate in advance of making the sale, or it could enter into a clear contractual relationship with the buyer where it says, you know, I assign you the responsibility for obtaining the certificate in the event of any interstate movement. Does that work? So, you know, I think to circle back to this case, this court doesn't need to decide whether, you know, a contractual assignment would sort of satisfy the regulations because here the result involves- Well, can I assign my legal duty and immunize myself if the reg says I'm a person responsible and I say I don't want that responsibility, it's on you? Do you think that works? So I think at least there would be a very good argument not available in this case that if you look at the regulation, it says that those persons have to ensure that the animals are accompanied by an interstate certificate of veterinary inspection. And I think where a party has entered into a contract and clearly assigned the responsibility to another party, and then that other party, despite the clear contractual obligation, nonetheless doesn't go ahead and get it, there would be a good argument that the seller had ensured that, to the best of its abilities, that the animals were accompanied by the veterinary inspection certificate. I'm kind of surprised you're taking that position. I think you might have a breach of contract action and reimburse them for the fine. So I think that those private remedies would also potentially be available. So I'm not taking a firm position on that case. I think, you know, this court need not decide this case to say on these facts, where there's no assignment of responsibility, the buyers are out of state, the horses were transported directly across state lines, it's quite clear that Fabrizio Slidestock was a person responsible. Has the agency given any guidance to sellers? Other than this regulation? No, the agency has not sort of engaged in a public education campaign, but I think that's because the regulation itself is quite clear. But it seems that it's inconsistent with the norms and the understanding in the industry. So on that point, I think it's important to understand the regulation imposes this obligation, the documentary obligation on all parties responsible for the interstate movement. Any industry is then allowed to comply with that obligation by assigning the obligation to obtain the document to one particular party. So it might be that in this industry, buyers typically get it. But that doesn't mean that if buyers do not get it, that the persons responsible do not include the seller, the transporter, and the buyer. Has the agency ever prosecuted and fined other sellers under this regulation? The agency regularly sends out warning letters to sellers and settlement agreements to sellers who it believes have violated this provision. So Fabrizio Slidestock is hardly alone in being a seller that is coming to task under this regulation. Has anybody ever been fined six figures for violation of the regulation? I'm not aware of the entire enforcement history of this provision. I do know that it's been enforced against sellers. I mean, in most cases, I think, as in this case, there was a settlement agreement offer. Fabrizio Slidestock declined to settle for an amount that was below six figures. And in the other cases, they also get settlement agreements. And I think in many cases, they enter into them. So there's been no need to bring it to an administrative complaint. So is the violator here the LLC? So the violator here is Fabrizio Slidestock at Colorado Corporation. And I understand Judge Rossman's question to take care of any issue around, you know, who is ultimately responsible for paying the judgment in this case? Well, would Tom Fabrizio be a person responsible also, you know, manager of the business? I don't think that, you know, a fine could be imposed on both. Why? For a single violation on both the individual and the corporate entity, I think, you know, there's one. Well, actually, is Tom Fabrizio a person responsible for the interstate transportation? I think so, Your Honor. What about the cowboys that loaded the truck? So, again, I don't think that this Court needs to decide the full extent.  Are the cowboys loading the truck a person responsible? So I think they might be, but it's not necessary. I would assume that the contractual relationship between the cowboys loading the trucks and the transport What about the truck driver? The transportation company. Let's just say that's Transport LLC and Tom Smith, the driver. Are they persons responsible? Understood, Your Honor. I think that they would be persons responsible because the question is about the conduct. And their conduct was, it was as a result of their conduct that the horses left. So what is the limiting principle, then? If it's all sources and causes, then how far do you take that? Well, it's a fact-specific inquiry. I think if I can just answer Judge Tinkovich's question very quickly here. You know, I think it'd be Part of my question is, what is the limiting principle? Understood, understood. I think it'd be surprising if, you know, the contractual relationship between the cowboy and the transportation entity for which the cowboy was working didn't sort of provide immunity for things like this, such that the persons really responsible would be the transportation entity. I mean, maybe so, but I just want to know who's responsible before we decide whether you're going to contract around it. Well, I think that, you know, all the parties that are causally responsible for the horses leaving the premises are persons responsible. And the buyer, LLC, and Tom's brother-in-law who bought the horses out of state, the owner of the LLC buyer would be persons responsible. So another universe. I mean, I don't think it's necessary to settle the entire universe of persons responsible to answer the question. We're talking about a vagueness challenge here. Facial vagueness challenge, right? Well, I think this Court's cases and the Supreme Court's cases are quite clear that, you know, the vagueness challenge concerns the facts in the particular case. It's generally understood on an as-applied basis, and a person whose conduct is quite clearly encompassed by the regulation can't be heard to raise a vagueness challenge on account of some borderline cases elsewhere in the universe. So I don't think, you know, for the vagueness challenge or for the pure regulatory question, this Court needs to decide the full scope of the term. I'll also say, you know, there is the ability to contract around this and assign the responsibility to a particular party. I mean, that may be true, but I don't think agencies can rely on people's ability to contract around their vague and overreaching regulations. So I guess I dispute the characterization of the regulation as vague and overreaching. Well, but you're saying if it does apply to the cowboy who helps load it, no big deal, because the cowboy probably has an employment contract that indemnifies him. That's a pretty sophisticated hire of cowboys. Yeah. So I think a few other things, Your Honor. I mean, first, the agency has enforcement discretion, and it uses that enforcement discretion in light of the statute. That's another problem under the vagueness doctrine. I mean, if we have selective enforcement, that's an indicator that a regulation or a statute is unduly vague. I don't think so, Your Honor. I mean, I think that it would be clear that any of these parties would be persons responsible, and then the question is whether the agency would, in fact, choose to bring an enforcement action against any of these parties. And they use that enforcement action to punish what they view as culpable actors, such as Fabrizious Livestock. But if it were a ranch hand. In this case, why didn't you go after the buyer? It seems like they would have been no less culpable than Fabrizious. Frankly, the transportation company, hey, Tom, do you have a certificate of that? I think all three of those entities would be equally culpable here. Well, I think the broader record disputes that. I mean, here Fabrizious Livestock was a repeat violator of the Animal Health Protection Act implementing regulations, not only on these 19 occasions with respect to the 50 horses under this provision, but also, as Your Honors noted, under a different provision that required Fabrizious Livestock to ensure that the animal offered for sale was disease free. I know, but the reason you have a broad regulation is to make sure that everybody in the transportation chain is alerted that they have some duty to make sure that these certificates are obtained. And I just don't see, you know, maybe Fabrizious is a repeat offender. For all I know, the transportation company and the buyers are repeat offenders. Again, so I guess on the vagueness challenge, it is black letter law that this court, you know, need not consider that if the regulation is vague in other contexts. And in fact, you know, any qualitative standard is going to have boundary cases, and those boundary cases don't render a regulation, you know, unconstitutionally vague where it has a clear central scope. And that clear central scope is this case, where Fabrizious Livestock, you know, it sold the horses to out-of-state buyers. It helped load those horses on its premises. The relevant premises that it was departing from was Fabrizious Livestock's premises, and the horses directly were transported across state lines. So I think it's quite clear that, you know, Fabrizious Livestock was among the persons responsible in this case. It was on notice of that, and this court need not decide those other cases, decide either the regulatory question or the constitutional question. You must be, I mean, is there a standard practice about who obtains these certificates? You know, Mr. Grant suggested that it's traditionally the buyer, because the buyer controls kind of the ultimate destination. So I don't think the record supports that broad assertion of industry practice here. The portion of the record that my friend on the other side points to is about sort of what happens at auction, when there's a sale at auction. But here, it was a sale on one-to-one sale from Fabrizious Livestock's premises. So I think, broadly speaking, the record here does not sort of indicate a industry practice about who typically gets these. But again, I don't think that's relevant to the regulatory question, which is, you know, whether you're a person responsible for the animals leaving the premises. And then, of course, industries are allowed to assign that responsibility, that obligation, to the buyer. And it might be that the buyer generally gets it. But if the buyer does not get it, that doesn't change the fact that all the other parties were responsible for the horses leaving the premises and are thus liable under the regulation. Is there a causation element here? Say Fabrizious sells it to an out-of-state buyer, but the buyer takes them from the premises and temporarily corrals them in-state, and then they continue moving across state lines at some point. Is Fabrizious a person responsible in a fact scenario like that? Yes. So I think there would be some question in that case whether the relevant premises is Fabrizious Livestock's premises or it was where the horses were corralled. So if you're thinking about who's responsible for the horses leaving a premises for interstate movement, in that case it might be the later destination, and in which case it would seem Fabrizious Livestock, or I guess the seller in that case, because that's not the facts here, would have been responsible. So there is a causation element? Yeah. I think that the way we read the text is it's whose conduct resulted in the departure of the animals for interstate movement. So that does speak in sort of roughly causal terms. But again, that causal standard is quite plainly met on the facts here. So the horses were not – it is undisputed that the horses were transported directly across state lines here. If the Court has no further questions, I urge the Court to deny the petition for  All right. Thank you, counsel. Counsel are excused, and the case is submitted.